Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence, or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES and AFFIRMS the Opinion and Award of Deputy Commissioner Bost and REVERSES the Opinion and Award of Deputy Commissioner Hoag. As the cases have been consolidated for decision, the Full Commission enters the following Opinion and Award:
 Plaintiff's claim in Industrial Commission File Number 218366 involved an admittedly compensable injury to his neck, shoulder, and arm while employed by defendant-employer in 1991. Plaintiff later sustained an admittedly compensable injury to his lower back on April 15, 1994 while working for the same defendant-employer which is the subject of I.C. No. 435035. Defendant-employer had changed insurance carriers at the time of plaintiff's April 15, 1994 injury. A dispute arose in late 1994 concerning whether plaintiff remained disabled and if so, whether his disability resulted from his April 15, 1994 admittedly compensable injury or from his prior 1991 injury. Plaintiff filed a claim for change of condition in his 1991 case (I.C. No. 218366) and a request for hearing on his April 15, 1994 injury claim (I.C. No. 435035). The two cases were not set for hearing before the same deputy commissioner, thus creating the potential for conflicting findings of fact, conclusions of law and awards.
 STIPULATIONS
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties in I.C. No. 218366:
1. All parties are properly before the North Carolina Industrial Commission and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of this action.
2. All parties have been correctly designated and there is no question of misjoinder or nonjoinder of parties.
3. On November 16, 1991 there existed between plaintiff and defendant-employer an employee-employer relationship.
4. On November 16, 1991 Cigna Property and Casualty provided workers' compensation insurance coverage for the defendant-employer and its employees.
5. On November 16, 1991 plaintiff's average weekly wage was $304.40.
6. On November 16, 1991 plaintiff sustained an injury by accident to his left shoulder and neck, liability for which was accepted by Cigna.
7. Plaintiff was paid temporary total disability benefits from September 9, 1992 to February 3, 1993 and was paid permanent partial disability benefits in a lump sum award on October 27, 1993 based upon a 20% permanent partial disability rating to the neck.
The Full Commission finds as fact and concludes as matters of law the following stipulations of the parties in I.C. No. 435035:
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Defendant is self-insured with Key Risk Management Services as the adjusting agent.
4. Plaintiff's average weekly wage was $348.00 yielding a compensation rate of $232.00.
5. Plaintiff sustained a compensable injury by accident to his lower back by way of a specific traumatic incident arising out of and in the course and scope of his employment on April 15, 1994. Plaintiff sustained a damaged disc at L4-L5.
6. Plaintiff was compensated in the amount of $4,408.16 for temporary total disability for 19 weeks from April 16, 1994 through August 26, 1994 at a compensation rate of $232.00 per week.
7. Plaintiff was compensated in the amount of $2,635.29 in temporary partial disability benefits for 9 weeks from the dates of August 27, 1994 through September 30, 1994 and again from October 5, 1994 through December 6, 1994.
8. The parties stipulated to 15 pages of Dr. Lestini's medical records and to the medical records of Dr. Ross Shuping.
9. The issue in this case concerns whether or not plaintiff is entitled to additional workers' compensation benefits as the result of his compensable April 15, 1994 low back injury.
 ***********
Based upon the competent evidence from the records in I.C. File Nos. 218366 and 435035, the Full Commission makes the following:
b
FINDINGS OF FACT
1. At the time of hearing before Deputy Commissioner Hoag on August 29, 1995, plaintiff was a forty-eight (48) year-old male with a fifth-grade education. He had been employed with defendant-employer as a gas deliverer for approximately ten (10) years before his second injury on April 15, 1994. His duties included delivering and servicing heavy liquid propane (LP) gas bottles weighing one hundred seventy (170) to one hundred eighty-four (184) pounds. These duties required plaintiff to bend, crawl under homes and lift up to 184 pounds.
2. Prior to his April 15, 1994 admittedly compensable low back injury, plaintiff had sustained an admittedly compensable work-related injury to his neck, left arm and shoulder on November 16, 1991 caused by lifting an oil drum.
3. As a result of his November 16, 1991 injury, plaintiff sought medical treatment from Dr. Robert L. Venable. Plaintiff was subsequently referred to a neurosurgeon, Dr. John R. Leonard, III who diagnosed a severe rupture of his disk at C6-C7 with cord and nerve root compression. Plaintiff underwent a cervical diskectomy.
4. By January 5, 1993, Dr. Leonard was of the opinion that plaintiff had reached maximum medical improvement. He returned plaintiff to work without restrictions and assigned him a twenty percent (20%) permanent partial disability rating to his neck.
5. Following his return to work plaintiff experienced decreased strength in his left hand and arm. He returned to Dr. Venable on January 11, 1993, who took him out of work through January 20, 1993. On February 2, 1993, Dr. Leonard recommended about a month of light duty and again released plaintiff to return to work with a twenty percent (20%) permanent partial disability rating to his neck.
6. Plaintiff received temporary total disability benefits from September 9, 1992 through February 3, 1993 and a lump-sum award on October 27, 1993 for the twenty percent (20%) permanent partial impairment rating to his neck.
7. Plaintiff was able to perform the heavy duties associated with his employment until April 15, 1994, although he continued to experience some numbness in his left arm and pain most of the time.
8. On April 15, 1994 plaintiff sustained another admittedly compensable work-related injury, resulting in a bulging disk in his back at L4 and L5 caused by lifting a one-hundred seventy pound (170 lb.) LP gas bottle.
9. Plaintiff sought treatment with Dr. Venable who referred him to Dr. Leonard after a lumbar spine CT performed on April 20, 1994 revealed a centrally bulging disk at L4-5. Dr. Leonard diagnosed plaintiff with a damaged disk between L4 and L5, placed him on bed rest, and started anti-inflammatory therapy. Dr. Leonard ordered a lumbar myelogram which showed a pronounced central disk bulge at the L4-L5. A post-myelogram CT scan of the lumbar spine also showed a bulging disk at L4-L5 level. Dr. Leonard continued plaintiff's conservative treatment. He did not feel surgery was recommended since the disk was not ruptured.
10. Dr. Leonard was of the opinion that plaintiff would be better off with a permanent restriction to light work rather than attempting surgery, since surgery was not likely to alleviate plaintiff's pain, Dr. Leonard released plaintiff from his care on June 7, 1994 with a fifteen percent (15%) permanent partial disability rating to his lower back.
11. Beginning approximately four weeks following his lumbar spine injury of April 15, 1994, plaintiff began to experience a worsening of the symptoms related to his cervical spine injury and also experienced right shoulder pain which was a new problem. The pain and problems with plaintiff's neck and left shoulder had never gone away completely after his November 16, 1991 injury.
12. At the request of defendant, plaintiff was seen by Dr. William F. Lestini of Triangle Spine and Back Care Center on June 16, 1994 for an independent medical evaluation. Plaintiff's primary complaints at the time were neck and shoulder pain. Dr. Lestini opined that plaintiff's prior surgery made him more susceptible to aggravation of his cervical spine problems. Dr. Lestini did not feel plaintiff had reached maximum medical improvement. In his opinion, plaintiff needed "aggressive spinal conditioning" and he therefore recommended a work hardening program for 6 weeks.
13. Plaintiff's pain became significantly worse following his July 1, 1994 participation in work hardening at Proactive Therapy for his lower back injury. Plaintiff's work hardening sessions lasted 4 hours per day, five days per week. Plaintiff's work hardening was discontinued after he experienced intense pain in his left arm and low back that caused him to seek treatment at the emergency room of the hospital.
14. Plaintiff returned to Dr. Lestini on July 14, 1994 complaining primarily of shoulder and left arm pain. Dr. Lestini ordered an EMG and nerve conduction studies. When seen by Dr. Lestini on July 29, 1994, plaintiff's EMG and nerve conduction studies showed left C7 nerve root irritation, borderline findings consistent with carpal tunnel syndrome, and mild bulging at C6-C7. Plaintiff's symptoms were consistent with nerve root irritation of the left C7 root and bilateral shoulder impingement syndrome. Dr. Lestini recommended that plaintiff try light duty work with medication to see how he responded. He gave plaintiff work restrictions of no lifting more than 15 pounds for three weeks followed by a medical recheck. Dr. Lestini advised plaintiff to begin to consider surgical intervention.
15. Plaintiff was examined by Dr. J. Ross Shuping of East Carolina Neurology on August 29, 1994. At said time, plaintiff was suffering from neck, back, arm and leg pain. Dr. Shuping agreed with Dr. Leonard's diagnosis of a protruded disk at L4-L5.
16. Defendant admitted liability for plaintiff's April 15, 1994, injury by accident and paid plaintiff temporary total disability compensation based on an average weekly wage of $348.00 from April 16, 1994 through August 26, 1994. As a result of his injuries, plaintiff cannot return to work in his prior job as gas deliverer.
17. In August, 1994 plaintiff was offered employment as a convenience store clerk with defendant-employer. Plaintiff was not able to work full-time as a store clerk due to his level of pain and his inability to do the duties of the job. Plaintiff's job duties were modified in an effort to accommodate his physical restrictions. Plaintiff attempted the modified work offered to him and received temporary partial disability benefits from August 27, 1994 through September 30, 1994 and from October 5, 1994 through December 6, 1994.
18. While working as a store clerk, plaintiff complained to his co-workers and supervisor about his difficulties in lifting, standing, twisting, bending and squatting and about the pain caused by his work activities.
19. Plaintiff's treating physicians found objective physical findings to account for his pain complaints.
20. Plaintiff was evaluated by Dr. David E. Tomaszek in Wilson, North Carolina on November 9, 1994. At that time plaintiff's problem was intractable pain which had failed to respond to conservative therapy. Dr. Tomaszek's examination findings included muscle spasms in the lumbar and cervical spine, back and ipsilateral leg pain on both sides caused by straight leg raising, and decreased sensation over the top of both feet. Dr. Tomaszek diagnosed plaintiff with cervical and lumbar spondylosis, or degenerative disk changes with a lumbar disk bulge causing spinal canal compromise. He recommended nerve block treatment in the lumbar spine. The recommended nerve block treatment was performed on November 14, 1994, but did not afford plaintiff significant relief for his back symptoms.
21. Dr. Tomaszek released plaintiff to return to the modified, light duty job as a convenience store clerk on November 28, 1994. Dr. Tomaszek regarded the modified, light duty job provided to plaintiff as a first step in attempting rehabilitation. Dr. Tomaszek restricted plaintiff to work involving no repetitive heavy lifting, twisting and bending. Although plaintiff attempted this modified duty job, the pain he experienced made it difficult for him to work more than two-to-four hours at a time.
22. Despite the ongoing modifications of his job duties while working as a convenience store clerk, plaintiff was still unable to perform this light duty job. Plaintiff did not work after December 6, 1994 and defendant-employer terminated his workers' compensation benefits without approval of the Industrial Commission.
23. Although Dr. Tomaszek agreed that plaintiff does tend to exaggerate his pain behavior, Dr. Tomaszek was of the opinion that plaintiff's pain threshold is low and that there is nothing about his functional capacities evaluation that suggests that plaintiff is a malingerer. Dr. Maier was of the opinion that plaintiff is a straight-forward, honest and truthful individual and that he had objective physical findings to account for some of his pain.
24. A functional capacity evaluation was performed on plaintiff on January 11, 1995 at ProActive Therapy in Greenville. This evaluation found the following major limiting factors: lifting limited to the light category; limited tolerance for stair climbing, squatting, and walking; limited tolerance for sitting; below average performance on gross/upper extremity tasks; and limited activities due to pain. The recommendations on the functional capacity evaluation included light lifting; frequent posture changes; and no excessive squatting, stair climbing, or walking. Plaintiff's physical capacity was rated as "light".
25. The functional capacities evaluation indicated that plaintiff exerted maximum effort within his pain tolerance.
26. Dr. Tomaszek was of the opinion that plaintiff was not capable of more than sedentary work as of February, 1995 and that he was temporarily totally disabled from working as a regular convenience store clerk. Dr. Maier opined that plaintiff was temporarily totally disabled as a result of the low back injury from doing even the modified convenience store clerk job when he last examined him in July, 1995.
27. Plaintiff's doctors approved the convenience store job on a trial basis as a method of work hardening, or rehabilitation. The doctors expected that plaintiff might be able to perform the modified job on a full time basis at some time in the future, but no time period was given. Plaintiff's earnings during the period of his return to work for rehabilitation, or trial purposes are not indicative of his wage earning capacity. In order for defendant to suspend benefits for plaintiff's failure to cooperate with his rehabilitative work, they needed to obtain an order from the Industrial Commission directing plaintiff to comply with their rehabilitative efforts. Defendant terminated plaintiff's compensation without an order of the Commission.
28. Even though defendant-employer modified the store clerk job extensively, plaintiff was still not able to perform even this modified job due to the pain in his low back, neck and arm. Therefore, even the modified job was not suitable to plaintiff's capacity and plaintiff did not unjustifiably refuse suitable employment.
29. Also, defendant did not offer plaintiff a job that would demonstrate his ability to earn wages in the competitive job market. The job offered was modified to such an extent that it did not reflect plaintiff's ability to compete with others for wages as a convenience store clerk in the job market. Plaintiff was not required to perform many of the duties performed by his fellow employees; he did not have to lift, mop, stock, do paperwork, sweep or wash windows; he was able to come and go at will; he always had assistance available when needed; and he never had to work alone as did many of co-employees who worked as convenience store clerks. The job offered to plaintiff was a "made work" job.
30. Although plaintiff did not experience cervical symptoms immediately following the second injury, the cervical symptoms increased approximately four weeks later. Dr. Leonard was of the opinion that a previous cervical condition could be aggravated by a significant injury to the lower back. Additionally, the physical therapy or work hardening plaintiff received for his admittedly compensable back injury significantly aggravated and worsened plaintiff's pain in his neck, left shoulder and left arm resulting from his November 16, 1991 admittedly compensable work injury.
31. As a result of his admittedly compensable injury of April 15, 1994, plaintiff has been incapable of earning his pre-injury wages in the same employment, or in any other employment. Plaintiff has been temporarily totally disabled from April 15, 1994 through the date of hearing before the deputy commissioner and continuing. Plaintiff's actual earnings in the modified job as a convenience store clerk are not proof of his wage earning capacity. Consequently, plaintiff remained temporarily totally disabled even while attempting the modified duty job. Defendant is entitled to a credit for any wages plaintiff actually earned in the convenience store clerk position.
32. Even though defendant has expressed a willingness to further modify the job duties of a store clerk to suit plaintiff's restrictions, further efforts to return plaintiff to this job would be futile. Dr. Maier is of the opinion that the rehabilitative efforts to attempt to return plaintiff to a store clerk position have gone on long enough and that plaintiff should be retrained for another position.
33. Plaintiff would benefit from further vocational rehabilitation in an effort to assist him in finding suitable employment.
34. The medical treatment provided to plaintiff by the various doctors has been reasonably required to effect a cure, provide relief or to lessen his disability.
35. Plaintiff's admittedly compensable injury on April 15, 1994 aggravated his pre-existing cervical spine and shoulder conditions caused by his November 16, 1991 injury. Plaintiff's treatment for his April 15, 1994 injury also further aggravated his pre-existing cervical and shoulder condition. Plaintiff's disability after April 15, 1994 has been caused by his April 15, 1994 compensable injury.
36. Although his cervical condition has worsened, this worsening or aggravation is attributed to his April 15, 1994 injury. Therefore, plaintiff has not sustained a compensable change of condition within the meaning of N.C. Gen. Stat. §97-47 in I.C. No. 218366.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has not proven that he has sustained a compensable change of condition within the meaning of N.C. Gen. Stat. § 97-47 for his November 16, 1991 injury in I.C. No. 218366. Plaintiff's claim for compensation against Cigna Property and Casualty is DENIED.
2. On April 15, 1994, plaintiff sustained an admittedly compensable injury by accident or specific traumatic event resulting in a bulging disk in his lower back caused by lifting a heavy LP gas bottle at work. N.C. Gen. Stat. § 97-2(6).
3. As a result of disability caused by his April 15, 1994 injury by accident, plaintiff is incapable of returning to his prior job with defendant-employer and plaintiff has been incapable of earning the same or greater wages in any other employment. Plaintiff remains disabled as defined by N.C. Gen. Stat. § 97-2(9) and Hilliard v. Apex Cabinet Co.,305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982).
4. Plaintiff is entitled to a presumption of continuing disability pursuant to the employer's admission of liability and the approved Form 21 which constitutes an award in this case.Kesiah v. W.R. Kesiah Plumbing, Inc., 124 N.C. App. 72,476 S.E.2d 434 (1996). After the presumption of disability attaches in favor of plaintiff, the burden shifts to defendant-employer to show that plaintiff is employable. Id.
5. Defendant has not rebutted plaintiff's presumption of continuing disability. Although plaintiff earned some wages in a highly modified, light duty job offered by defendant, the job was so modified to fit plaintiff's physical restrictions caused by his compensable injury that it cannot be considered a job ordinarily available in the competitive job market and is not evidence of plaintiff's ability to earn wages. Peoples v.Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798 (1986).
6. Defendant has not shown that the job offered to plaintiff was a suitable job taking into account plaintiff's physical and vocational limitations. Plaintiff was incapable of performing even the modified job. Plaintiff did not unjustifiably refuse suitable employment. N.C. Gen. Stat. § 97-32.
7. Plaintiff is entitled to sanctions for defendant's unilateral termination of compensation without Industrial Commission approval. Plaintiff's work as a convenience store clerk was rehabilitative employment. Defendant was required to seek an order from the Industrial Commission directing plaintiff to comply with rehabilitative employment prior to suspending benefits for failure to comply. N.C. Gen. Stat. § 97-25. Also, defendant admitted liability pursuant to a Form 21 agreement and cannot, therefore, terminate benefits without approval of the Industrial Commission.
8. Plaintiff is entitled to payment of medical expenses for his compensable injury for so long as medical treatment is needed to effect a cure, provide relief or lessen his disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Plaintiff's claim for compensation against Cigna Property and Casualty is DENIED. Cigna Property and Casualty is DISMISSED as a party in this consolidated case.
2. Defendant in its capacity as a self-insured employer with Key Risk Management Services as its servicing agent, shall pay to plaintiff temporary total disability compensation at the rate of $232.00 per week from April 15, 1994 through the date of the hearing before the deputy commissioner and continuing until further orders of the Industrial Commission. Defendant is entitled to a credit for all temporary total disability benefits previously paid to plaintiff, temporary partial disability benefits paid to plaintiff and any wages earned by plaintiff since April 15, 1994.
3. Defendant shall pay all medical expenses incurred or to be incurred in the future by plaintiff as a result of his April 15, 1994 compensable injury when bills have been submitted and approved through procedures adopted by the Industrial Commission.
4. Plaintiff's attorney is awarded a fee of twenty-five percent of the compensation due plaintiff herein, payable as follows: 25% of the accrued compensation due plaintiff shall be deducted and paid directly to plaintiff's attorney; thereafter, plaintiff's attorney shall be paid directly every fourth check of future compensation due plaintiff. Plaintiff's attorney's fee obligation is reduced by $3,000.00 which is hereby ordered to be paid by defendant as sanctions for partial litigation expenses incurred by plaintiff due to defendant's unilateral termination of benefits without Industrial Commission approval.
5. Defendant shall pay the costs due this Commission, including any unpaid deposition fees to the various doctors.
 S/_________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/______________________ LAURA K. MAVRETIC COMMISSIONER
S/______________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER